THE SECOND MUNICIPALITY of NEW ORLEANS *v.* PIERRE OSCAR LABATUT and another.

The stat. of 8 March, 1836, dividing the city of New Orleans into three munici-
palities, did not abolish the old city corporation, nor deprive it of the right of
suing for the amount of forfeited bonds and recognizances, directed by sect. 4
of the stat. of 1 April, 1835, to be recovered for its use. There is nothing in the
statute dividing the city into municipalities, nor in any other statute, giving to
any municipality the right to recover the amount of a forfeited bond or recogni-
zance executed before its Recorder.

APPEAL from the District Court of the First District, *Bucha-nan,* J.

*Rawle,* for the plaintiffs.

*Bodin,* for the appellants.

*Roselius,* for the First Municipality.

*H. H. Strawbridge,* for the Charity Hospital.

SIMON, J.   The Second Municipality seeks to recover the amount of a bond taken by its Recorder for the appearance be-fore him of P. Oscar Labatut, one of the defendants, on a charge of having embezzeled and converted to his own use, funds of the Commercial Bank of New Orleans.

The defendants pleaded the general issue, further denying that the plaintiffs are the owners of the bond sued on, or that said bond has ever been forfeited, or constitutionally pronounced to to be forfeited.

After issue had been joined by the defendants, the Charity Hospital and the First Municipality intervened, the latter claim-ing to be entitled to a portion of the bond sued on, in the same right as that set up by the plaintiffs ; and the Charity Hospital claiming the benefit of the recovery of the whole amount of the bond, by virtue of an act of the legislature, dated the 11th of March, 1837.

Judgment was rendered below in favor of the plaintiffs for the whole amount of the bond ; from which judgment the defendants, after having vainly attempted to obtain a new trial, took this ap-peal.

The only question which we have to consider in the present

state of the case, is, whether the plaintiffs, who pretend to be the owners of the bond sued on, by virtue of the act of 1836, dividing the city into three distinct municipalities or corporations, are entitled to recover on the bond.

It is contended by the plaintiff's counsel that, except for liquidating its unfinished affairs, the old corporation has ceased to exist; that the act of the first of April, 1835, (Sess. Acts, p. 179,) under which the city of New Orleans was entitled to claim the benefit of the bond sued on, has ceased to be a part of the charter of the old corporation; and that, by the provisions of the act of 1836, the municipalities have respectively succeeded to all the rights allowed to the city by the law of 1835, on the bonds taken within their respective limits.

In the case of the *State of Louisiana* v. *Desforges et al.*, 5 Robinson, 253, we held, " that from the moment the bond was forfeited, *the corporation of New Orleans became vested with the right to sue for the recovery of its amount through its attorneys,* whose duty it was to institute proceedings for that purpose, *for the use of the corporation,* and that the Attorney General could not enforce the payment of the bond in the name and for the benefit of the State." The question in that case was, whether the State could sue for the recovery of the bond; and, as we were of opinion, that the right of action had been abandoned by, and did not belong to the State, and that it should be exercised by the city attorneys for the corporation, we dismissed the proceeding instituted by the Attorney General. Here, however, a new party claims the benefit of the bond, and sues for its proceeds, and it behoves us to examine, as a new question, how far the plaintiffs' pretensions are supported by the laws on which they rely. Is it true that, except for certain purposes, the old corporation of New Orleans has ceased to exist?

The law of the 8th of March, 1836, (Bullard & Curry's Digest, p. 120,) was passed for the purpose of dividing the city of New Orleans into three municipalities, or sections, each with distinct municipal powers. Each of these municipalities became a part of the whole, forming together what was formerly called " the corporation of the city of New Orleans," still recognized to exist by different sections of the said act, which, it may here be re-

marked, contains no absolute repealing·clause, further than what is contained in the 26th section. But the plaintiffs' counsel, relying particularly on the 4th, 10th, 11th and 21st sections of the act of 1836, has attempted to show us, that the existence of the old corporation is inconsistent with the powers given to the three municipalities ; and that the intention of the legislature was, that the old corporation should be replaced by the three new corporations therein created. By the 4th section, it is provided, that " each municipality shall possess all such rights, powers and capacities as are usually incident to municipal corporations ; shall be capable of suing and being sued, &c. ; and shall possess and exercise, within their respective limits, all such powers, rights, &c., as are now possessed and exercised by the corporation of New Orleans."

By the 10th section, it is enacted, that all laws of this State, conferring rights and powers and imposing duties on the corporation of New Orleans, or otherwise *providing for the government thereof, &c.*, shall continue in full force in each of the municip lities, respectively, until they are repealed, &c.

The 11th section gives to each municipality the exclusive right of making and enforcing all public laws and regulations within their respective limits, shows the extent of their exclusive jurisdiction, and mentions the exceptions to the rule.

And the 21st section provides, that nothing in the act shall be understood to prevent the city of New Orleans, *under the present corporate title thereof, from suing and being sued, and performing other corporate acts prescribed by law, whenever, and so far only, as such acts may be necessary for the mere purpose of liquidating the unfinished affairs thereof.*

Now, from the provisions contained in these and in the several other sections of the same act, we are not prepared to say that the old corporation has been abolished, or even that, although yet in existence, it should be deprived of the benefit of the act of 1835, conferring upon it the right of suing for the recovery of the bonds specially affected to its use. The 1st section recognizes its existence, by dividing it into three distinct sections or municipalities ; the 9th section preserves the chief magistrate of the the city, to be elected as theretofore, and to continue to exercise all the powers which he previously had; not incompatible with

the provisions of the new law. The 20th section creates a general council for its administration, with the powers therein described ; and by the 4th section of a law of 1840, (B. and C.'s Digest, page 130,) it is provided, that " whereas doubts have arisen whether the corporation of New Orleans is capable of holding or possessing any real estate, &c., *the said corporation is hereby declared capable of acquiring, retaining and possessing, by donation or legacy, any property real or personal, whether situated within or without the limits of said city, &c.*" Furthermore, its existence is also clearly recognized in an act of 1843, p. 55, entitled *" An act to define the powers of the Corporation of the City of New Orleans."*

As we said in the case of *The First Municipality* v. *The Commissioners of the Sinking Fund,* 1 Robinson, 289, it is an error to believe that " the municipalities have succeeded to the powers, rights, and privileges of the corporation created by the act of the 17th of February, 1805, and the various acts supplementary and amendatory thereof; they are the creatures of the act of 1836, and to it we must look for their powers, rights, and authority." Now, is there any thing in the law of 1836, which transfers to the municipalities the benefit of the law of 1835, under which the present suit is brought ? Was not said law a part of the charter of the old corporation, which, except so far as it may be repealed by the 26th section of the law of 1836, is yet in existence ; and can it be said that the provisions of the law of 1835, are contrary to the enactments of the law creating the three municipalities ? It is true, the corporation may be considered as being in a state of liquidation ; but it is represented by the Mayor and City Council, and is therefore susceptible of being administered as any other corporation. Nay, it may seem strange that a corporation, simply in a state of liquidation, should have the power, under the law of 1840, *of acquiring, retaining and possessing, by donation or legacy, any property, real or personal,* wherever it may be situated. Such rights and powers are incompatible with the idea, that the corporation to which they are granted has ceased to exist, or is in a state of liquidation leading to the end of its existence ; and we are firmly of opinion, that if the old corporation is capable of acquiring and possessing real and *per-*

*sonal* property by donation or legacy, and therefore, of doing all the acts necessary to preserve and enforce such rights, it is also capable of suing for the recovery of bonds which, donated by the State under the law of 1835, are to be, when forfeited, recovered for its use and benefit.

The solution of this question may, perhaps, appear contrary to the letter of some isolated provisions of the act of 1836, and particularly to the 21st section, which seems to limit the extent of the exercise of the acts of the old corporation; but again, we cannot understand the 10th section of said law, as conferring any other rights and powers upon the municipalities than those which may be necessary *for the government thereof;* and as it is no where mentioned in the law, that the municipalities shall be substituted to the privilege, or right, granted to the city in general by the law of 1835, and as the law of 1840, above referred to, seems to extend the capacity of the old corporation to cases in which property, real or *personal*, may be acquired and possessed by donation or legacy, we cannot come to any other conclusion, but that the right of recovering the bond sued on belongs to the corporation of the city of New Orleans, and cannot be exercised by the plaintiffs, or any of the other municipalities.

Furthermore; the law of 1835 says, that " all bonds and recognizances taken by the associate judges, *mayor*, or recorder, &c., shall, when forfeited, be recovered, &c." Now, if it were true, that the old corporation has ceased to exist, and that the three municipalities are respectively entitled to recover in its place the amount of the bonds taken within their limits, what would become of the bonds taken by the *mayor ?* Would they belong to any of the municipalities ? Certainly not. They must be appropriated and sued for, for the benefit and sole use of the city ; and it seems to us clear, that if the city has a right to exercise an action for the recovery of such bonds, *through their attorneys,* the old corporation has equally the right of suing for and recovering any of the other bonds, since there is no provision in any of the subsequent laws giving them to the municipalities.

It is, therefore, ordered, that the judgment of the District Court be reversed, and that ours be for the defendants as in case of nonsuit, with the costs in both courts.